USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/02/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHIE FOSTER LEVINE,

                         Plaintiff,

     -against-

LINDA FRANCES LEE FENSTERMAKER, in her
individual and official capacity as Regional Director
of the New York State Division of Human Rights,

                      Defendants.

No. 23-cv-2543 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

       Richie Foster Levine ("Plaintiff") brings this action against Linda Frances Lee Fenstermaker ("Defendant") in the Complaint. ("Compl.," ECF No. 1.) Plaintiff asserts the following causes of action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendant in her personal and official capacities: (1) violation of the Fourteenth Amendment guarantees of due process and equal protection; (2) failure to intervene; (3) First Amendment retaliation; (4) abuse of process; and (5) violation of the New York State Division of Human Rights' regulations. (*Id*. ¶¶ 60-100.)

       Defendant moves to dismiss Plaintiff's Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). ("Motion", ECF No. 22.) For the following reasons, the Defendant's Motion is GRANTED.

**BACKGROUND**

**I.**     <u>Factual Background</u>

       The following facts are taken from the Complaint and assumed to be true for the purposes of Defendant's Motion.

1

Plaintiff is a person with prior convictions. (Compl. ¶ 3.) Defendant is the Regional Director of the New York State Division of Human Rights ("the Division"), *id.* ¶ 4, which is the New York state agency vested with the authority to investigate, prosecute, and adjudicate discrimination cases, including against people with prior convictions, N.Y. Exec. Law §§ 296(15), (16); N.Y. Corr. Law § 752. An individual who alleges that he has faced discrimination may file a complaint with the Division. The Division need not investigate every single complaint, and has discretion to pursue only what it deems as a viable case. *See, e.g.,* N.Y. Exec. Law § 297(3)(c).

Plaintiff sent seven complaints to Defendant in or around September of 2022 regarding employers that denied Plaintiff employment. (Compl. ¶ 21.) On September 27, 2022, (*id.* ¶ 23.) October 17, 2022, (*id.* ¶ 24.) and October 28, 2022, Plaintiff attempted to contact Defendant via telephone calls and emails but she did not respond (*id.* ¶ 25). On November 8, 2022, Plaintiff informed Defendant that he would go to the Inspector General. (*Id.* ¶ 26.) Defendant replied to Plaintiff via email informing him that his complaints were received and are under review. (*Id.*) On November 20, 2022, Plaintiff requested details of the investigation from Defendant, who did not respond to this request. (*Id.* ¶ 27.) On December 6, 2022, Plaintiff emailed Defendant informing her that he would be reporting her to the Inspector General and the New York Governor's office. (*Id.* ¶ 29.) Two days later, Defendant replied to Plaintiff's latest email with a signed letter ("the Letter"). (*Id.* ¶ 30.) The Letter stated that the New York Division of Human Rights was returning his complaints and that "[i]f [he] submit[ted] further complaints that are assessed by the Division as lacking a Human Rights Law claim, these will also be returned to [him] without processing." (*Id.* ¶ 31.) Plaintiff alleges that the Letter barred him from "fil[ing], send[ing], communicat[ing] or convey[ing] any messages about complaints or future complaints that would occur now or in the future to [D]efendant." *(Id.* ¶ 35.)

**II.**    Procedural History

Plaintiff filed his Complaint on December 20, 2022. (*See* ECF No. 1.) On September 23, 2023, Defendant filed the instant Motion (ECF No. 22), as well as a memorandum of law (ECF No. 23) and a reply (ECF No. 25) in support thereof. Plaintiff filed an opposition to Defendants' Motion. ("Pltf's Opp.", ECF No. 24).

## LEGAL STANDARDS

**I.**    Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether a complaint states a claim upon which relief can be granted, the court "begins by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but has not shown that the pleader is entitled to relief. *Id.*

*Pro se* complaints, however, are held to less stringent standards than those drafted by lawyers. *Thomas v. Westchester County*, 2013 WL 3357171 (S.D.N.Y. July 3, 2013). Because of this a *pro se* party's pleadings should be read, "to raise the strongest arguments that they suggest." *Id.* at 2. Applying the pleading rules permissively is especially appropriate when *pro se* plaintiffs allege civil rights violations. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir.

3

2008). Even in a *pro se* case, however, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d. Cir. 2010) (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a *pro se* plaintiff's] complaint supports, [it] cannot invent factual allegations that [a *pro se* plaintiff] has not pled." *Id.*

II.    42 U.S.C. § 1983

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

III.   Due Process

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "Due process has a substantive component and a procedural component." *Nnebe v. Daus*, 184 F. Supp. 3d 54, 61 (S.D.N.Y. 2016). To state a procedural due process claim, a plaintiff must show that he has a constitutionally

4

protected liberty or property interest that has been interfered by the government without due process. *Grasson v. Bd. of Educ. of Town of Orange*, 24 F. Supp. 3d 136, 146 (D. Conn. 2014). To state a substantive due process claim, a plaintiff must allege (1) a valid liberty interest and (2) that the defendant infringed upon this interest in an irrational or arbitrary manner that "shocks the conscience." *Murphy v. Hughson*, 82 F.4th 177, 188-189 (2d Cir. 2023).

IV.    Equal Protection

The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Typically, equal protection claims involve "discrimination against people based on their membership in a vulnerable class." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Individuals who do not allege a membership in a vulnerable class, but have been subject to discrimination by government officials, however, can also assert an equal protection claim. *Id.* Such claims can be asserted under a class-of-one theory or under the theory of selective enforcement. *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 217 (E.D.N.Y. 2015).

To establish a class-of-one equal protection claim, the plaintiff "must allege that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 544 (S.D.N.Y. 2014). The plaintiff must allege "an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for Town of Skaneateles,* 610 F.3d 55, 59 (2d Cir.2010) (internal quotation marks omitted). The plaintiff must also establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment

are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* at 59–60.

Alternatively, to assert a selective-enforcement equal protection claim, a plaintiff must allege that "(1) he was treated differently from other similarly situated individuals and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rankel*, 999 F. Supp. 2d at 544 (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)).

V.      First Amendment Retaliation

To establish a First Amendment retaliation claim, "a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

VI.     Failure to Intervene

Government officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other officials in their presence. *See Muniz v. Orange Cnty.*, No. 22 CV 529 (NSR), 2024 WL 1142550, at *7 (S.D.N.Y. Mar. 14, 2024). As a result, "[a]n officer who fails to intercede in the use of excessive force or another constitutional violation is liable for the preventable harm caused by the actions of other officers." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). To succeed on a failure to intervene claim, a plaintiff must show that "(1) the defendant had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the defendant's position would have known that the plaintiff's constitutional rights were being violated; and (3) the

defendant did not take reasonable steps to intervene."  *Cornell v. Vill. of Clayton*, No. 5:20-CV-1283, 2023 U.S. Dist. LEXIS 162919 *19 (N.D.N.Y. Sep. 13, 2023).

VII.    Abuse of Process

To establish an abuse of process claim, a plaintiff must establish that the defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003). The elements of an abuse-of-process claim are derived from state law, and therefore such claims are presumptively unreviewable by federal courts, with the exception of cases where criminal process has been abused. *See Cook v. Sheldon*, 41 F.3d 73, 79-80 (2d Cir. 1994).

VIII.    Eleventh Amendment Immunity

Under the Eleventh Amendment, "state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citations omitted; brackets in original). "[T]he Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.*  In enacting Section 1983, Congress did not abrogate the states' sovereign immunity, *Gaby v. Bd. of Trustees of Cmty. Tech. Colleges*, 348 F.3d 62, 63 (2d Cir. 2003) (*per curiam*) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.") (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989)).

**DISCUSSION**

Plaintiff alleges that Defendant violated his constitutional rights by barring him from filing, amending, or submitting complaints "now or in the future." (Compl. ¶ 35.). All of Plaintiff's claims arise from a Letter he received from the Division. A plain reading of the Letter, which Plaintiff annexes to his Complaint, makes clear that Plaintiff was in no way barred from filing complaints now or in the future. The Letter merely states that any future complaints "that are assessed by the Division as lacking a valid Human Rights Law claim…will…be returned to [the Plaintiff] without processing." (ECF No. 1, Ex A.) The Division therefore clearly indicates that they will continue to accept and review new complaints from Plaintiff, and only return them *if* they fail to state a Human Rights Law claim. In addition, the Letter advises that if a previously returned complaint is "submitted again," then "it will not be accepted or acknowledged" – which, again, does not bar any future complaints from Plaintiff. *Id.* Finally, contrary to Plaintiff's assertions, the Letter does not forbid him from communicating with the Division, *see* Compl. ¶¶ 35-37, but rather explains that the Division will not provide further information regarding his previously rejected complaints, *see* ECF No. 1, Ex A.

All of Plaintiff's claims, including his claims for violation of due process and equal protection, failure to intervene, retaliation, abuse of process, and violation of the Division's regulations, against Defendant stem from his misreading of the Letter as imposing a bar on his filing of future complaints. (*See, e.g.*, Compl. ¶ 100 (the Letter "bar[s] Plaintiff] from utilizing a state agency resource . . . for no valid reason under due process"); *id.* (the Letter "treat[s] Plaintiff differently than every other person who files complaints who has an arrest/conviction record" by "barring him from utilizing a state agency resource"); *id.* ¶ 81 (the Letter "chilled Plaintiff Levine's written freedom of speech, including drafting any further complaints"); *id.* ¶ 85 (Letter which

"stop[ped] Plaintiff from exerting his rights civilly and filing complaints against employers" was an abuse-of-process); *id*. ¶ 69 (asserting that the Division's regulation "do not provide the ability to allow a Regional Director to bar a person."). Because the Letter imposes no such bar, all of Plaintiff's claims fail. *See, e.g., Barnum v. Millbrook Care Ltd. P'ship*¸ 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994) (where a document annexed to the complaint contradicts the allegations in the complaint, the document controls). Accordingly, owing to Plaintiff's own misreading and misunderstanding, the Court dismisses the entirety of Plaintiff's Complaint with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint is GRANTED. The Clerk of Court is kindly directed to terminate the Motion at ECF No. 22, to enter judgment in favor of Defendant and to close the case.

Dated:    July 2, 2024                                    SO ORDERED:
          White Plains, New York

                                          _____
                                              NELSON S. ROMÁN
                                          United States District Judge